### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF ARKANSAS
### EL DORADO DIVISION

CHRISTOPHER HUSBANDS,

      Plaintiff,

      v.

Current and/or Former El Dorado Police
Officers SHELLY ROWLAND, SABRINA
WILLIAMS, and SCOTT HARWELL, and the
CITY OF EL DORADO, ARKANSAS,

      Defendants.

Case No. 1:24-cv-01003-SOH

JURY DEMAND.

### COMPLAINT

Now comes Plaintiff, CHRISTOPHER HUSBANDS, by and through his attorneys, Kathleen T. Zellner & Associates, P.C., and complaining of Defendants, SHELLY ROWLAND, SABRINA WILLIAMS, SCOTT HARWELL, and the CITY OF EL DORADO, ARKANSAS, states as follows:

### INTRODUCTION

1. In October 2021, someone hacked Plaintiff's Facebook account and uploaded 13 images of child pornography to a photo album on his Facebook page.

2. Prior to the hack, Plaintiff had no criminal history. He was married with two young children, gainfully employed, and an upstanding member of his community.

3. Based on the forensic evidence of the upload, it was obvious that an unidentified individual breached Plaintiff's Facebook account—and several others— as part of a larger scheme to upload illegal images to a public platform *en masse*.

1

4.      Unfortunately, "hacks"—whether they be of our email, social media, or even financial accounts—have become ubiquitous.

5.      Most of us view hacks as a potential nuisance that may, for example, expose our contacts to phishing scams or our electronic devices to malware.

6.      Very few people contemplate that a hack may lead to the filing of serious felony charges against them based on the actions of the hacker, given that unauthorized access of our accounts almost always leaves a digital footprint.

7.      However, that was precisely what happened to Plaintiff.

8.      Despite overwhelming evidence that the upload of illicit images to Plaintiff's Facebook account was the result of a hack, Defendants pursued and initiated criminal charges against him with reckless abandon.

9.      In the course of their investigation, Defendants ignored obvious exculpatory evidence, fabricated inculpatory evidence, and misled the prosecuting attorney and court into believing that probable cause existed to charge Plaintiff with more than 50 counts of child pornography.

10.      Defendants' malicious and wrongful conduct wreaked havoc on Plaintiff's life. Plaintiff lost his job, he was labeled a pedophile by the community, and he faced charges that could result in decades in prison.

11.      More than a year after Plaintiff's arrest, the charges were dismissed by the prosecuting attorney after a report from Plaintiff's expert verified what was clear all along—Plaintiff never possessed any child pornography, and an unauthorized user accessed his account to upload the illicit images.

2

12.     Unfortunately, by the time the charges were dismissed, Plaintiff had already suffered irreparable financial, emotional, mental, and reputational harm.

13.     This lawsuit seeks redress for the extreme hardship and incalculable damages Defendants have inflicted upon Plaintiff.

## JURISDICTION AND VENUE

14.     This action is brought against Defendants pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

15.     This Court has original jurisdiction of the action against Defendants pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

16.     Venue is proper under 28 U.S.C. § 1391(b) because, on information and belief, all Defendants reside in Arkansas, and the events giving rise to the claims asserted herein primarily occurred within this judicial district.

## Parties

17.     Plaintiff, Christopher Husbands, is a resident and citizen of the State of Arkansas.

18.     At all times relevant herein, Defendants Shelly Rowland ("Defendant Rowland"), Sabrina Williams ("Defendant Williams"), and Scott Harwell ("Defendant Harwell") (collectively "Defendant Officers") were duly appointed members of the El Dorado Police Department.

19.     Defendant Officers are each named in their individual capacity.

3

20.     Defendant City of El Dorado, Arkansas ("the Defendant City") is a municipal corporation formed and existing under the laws of the state of Arkansas, having as one of its departments the El Dorado Police Department.

21.     At all times relevant herein, the Defendant City employed Defendant Officers.

22.     At all relevant times, Defendant Officers were acting in the course and scope of their employment as members of the El Dorado Police Department.

23.     On information and belief, all Defendant Officers reside in Union County, Arkansas.

## FACTUAL ALLEGATIONS

*Background*

24.     On October 21, 2021, at approximately 2:17 a.m., an unidentified individual—not Plaintiff—attempted unsuccessfully to login to Plaintiff's Facebook account from IP address 42.112.236.73.

25.     At the time of the login attempt, the foregoing IP address was registered with a residential internet service provider ("ISP") in Hanoi, Vietnam.

26.     At approximately 3:14 a.m., an unidentified individual—again, not Plaintiff—logged in to Plaintiff's Facebook account from IP address 192.252.220.26.

27.     At the time of the login, the foregoing IP address was registered with ISP Performive.

28.     Performive is an anonymous hosting service which offers subscribers the ability to access the internet from untraceable IP addresses.

29. Performive's IP addresses are primarily used to operate servers, Virtual Private Networks, and proxies, which means that the web traffic it hosts poses a substantial risk of fraud.

30. After logging into Plaintiff's Facebook account, the unidentified individual created a photo album on Plaintiff's Facebook page and uploaded 13 images of child pornography to the album.

31. By uploading the images to Plaintiff's Facebook page, the images would have been available to the public and/or Plaintiff's friends on Facebook.

32. The notion that Plaintiff would use an untraceable IP address to upload illicit images to a Facebook page clearly identified as belonging to him is illogical.

33. That the images were uploaded from an untraceable IP address to Plaintiff's Facebook page alone strongly suggests that someone other than Plaintiff uploaded the images.

34. Facebook flagged the images as suspected child pornography and deleted them from Plaintiff's page.

35. Facebook generated a CyberTipline Report regarding the illicit images and sent it to the National Center for Missing and Exploited Children ("NCMEC").

36. The CyberTipline Report included the IP address of the attempted login to Plaintiff's Facebook account shortly before the illicit images were uploaded, as well as the IP address from which the images were uploaded.

37. The CyberTipline Report also showed the following:

5

a. The IP address used to upload the images was not one used by Plaintiff either before or after the illicit images were uploaded;

b. The authenticated access of Plaintiff's Facebook account from IP addresses associated with Plaintiff indicated that he used Apple devices, *i.e.*., devices utilizing an iPhone or Mac operating system; and,

c. A device utilizing Windows was used to upload the illicit images.

38.    Facebook also flagged several of the illicit image files as "viral" in the CyberTipline Report because the images had been uploaded to Facebook many times in a short period of time.

39.    There was no information in the CyberTipline Report to suggest that someone uploaded the "viral" image files using Plaintiff's Facebook account on any occasion apart from the single instance described above.

*The "Investigation"*

40.    The NCMEC forwarded the CyberTipline Report to the El Dorado Police Department.

41.    Defendant Rowland was assigned to investigate the CyberTipline Report.

42.    At the time she was assigned to investigate the CyberTipline Report, Defendant Rowland held herself out as specializing in the investigation of internet crimes against children.

6

43.     Specifically, at the time of the investigation, Defendant Rowland was a member of the Internet Crimes Against Children ("ICAC") Task Force with the El Dorado Police Department.

44.     On information and belief, Defendant Williams assisted with the investigation as a member of the ICAC Task Force.

45.     On information and belief, Defendant Harwell assisted with and/or supervised the investigation as a member of the ICAC Task Force.

46.     Minimal investigation into the CyberTipline Report would have revealed that the initial attempt to login to Plaintiff's Facebook account originated from an IP address registered with an ISP provider in Vietnam.

47.     Minimal investigation into the CyberTipline Report would have revealed that the illicit images were uploaded using an IP address registered with an anonymous hosting service, *i.e.*, ISP Performive, which is associated with a substantial risk of fraudulent internet activity.

48.     Minimal investigation into the CyberTipline Report would have revealed that Plaintiff's devices utilized different IP addresses than the IP address used to upload the illicit images.

49.     Minimal investigation into the CyberTipline Report would have revealed that Plaintiff used Apple devices to access his Facebook account, whereas a device with a Windows operating system was used to upload the illicit images.

7

50.     Minimal investigation into the CyberTipline Report would have revealed the incongruity of Plaintiff utilizing an untraceable IP address to upload illicit images to his public or semi-public Facebook account.

51.     Based on the above-described information contained in the CyberTipline Report, it would have been obvious to any officer who had received even a minimal amount of training in cybercrimes that Plaintiff was innocent and the victim of a hack.

52.     On December 28, 2021, Defendant Rowland filed two affidavits in support of applications for search warrants with the Union County District Court.

53.     In the search warrant affidavits, Defendant Rowland cited her expertise as a member of the ICAC Task Force to bolster her investigative findings as to probable cause.

54.     The affidavits falsely alleged that probable cause existed to search Plaintiff's residence and place of business and to seize any electronic devices capable of storing photographs and/or video.

55.     On December 28, 2021, Defendant Rowland filed an affidavit in support of an application for a warrant for Plaintiff's arrest.

56.     In the arrest warrant affidavit, Defendant Rowland again cited her expertise as a member of the ICAC Task Force to bolster her investigative findings as to probable cause.

57.     The affidavit falsely alleged that probable cause existed to arrest Plaintiff for one count each of computer exploitation of a child (AR Code § 5-27-605),

8

computer child pornography (AR Code § 5-27-603), pandering or possessing visual or print medium depicting sexually explicit conduct involving a child (AR Code § 5-27-304), and distributing, possessing, or viewing of matter depicting sexually explicit conduct involving a child (AR Code § 5-27-602) (hereinafter collectively referred to as "child pornography charges").

58.    In the search and arrest affidavits, Defendant Rowland omitted the following exculpatory information:

    a.  Someone attempted to login to Plaintiff's Facebook account from an IP address registered with an ISP in Hanoi, Vietnam, shortly before the illicit images were uploaded;

    b.  The images were uploaded using an IP address registered with an anonymous hosting service which carried with it a substantial risk of fraudulent internet activity;

    c.  Plaintiff's devices utilized different IP addresses than the IP address used to upload the illicit images;

    d.  Plaintiff used Apple devices to access his Facebook account, whereas a device with a Windows operating system was used to upload the illicit images;

    e.  The illicit images were uploaded from an untraceable IP address to an album on Plaintiff's Facebook page accessible to the public and/or Plaintiff's Facebook friends; and,

f.   Facebook identified several of the illicit images as "viral,"
suggesting that other accounts had attempted to upload the same
illicit images at around the same time.

59.   Defendant Rowland averred in the search and arrest affidavits the
following:

> Based on all the aforementioned information I was then
> able to show the Facebook account used to upload the
> photographs belonged to [Plaintiff]. The IP Address being
> used and the mobile number provided to Facebook both
> belonged to him as well.

(Emphasis added).

60.   The foregoing averment is false, as Defendant Rowland possessed
information showing that the IP address used to upload the photographs was not
associated with Plaintiff's residence, his business, or any of his electronic devices.

61.   Based on the affidavits filed by Defendant Rowland, the district court
issued the search and arrest warrants.

62.   On December 29, 2021, Defendant Officers executed the arrest warrant
and took Plaintiff into custody.

63.   On December 29, 2021, Defendant Officers executed the search
warrants.

64.   During the execution of the search warrant at Plaintiff's residence,
Plaintiff's wife told Defendant Harwell that she believed that Plaintiff's Facebook
account had been hacked.

65.   Defendant Harwell told Plaintiff's wife that she should prepare herself.

10

66.    Defendant Harwell told Plaintiff's wife that people who possess child pornography keep it a secret.

67.    Defendant Harwell told Plaintiff's wife that they were certain to find child pornography on Plaintiff's devices.

68.    Contrary to Defendant Harwell's assertions, the search of Plaintiff's residence and business failed to yield any evidence to support the child pornography charges.

69.    Defendants did not recover any device that utilized a Windows operating system.

70.    Defendants did not locate any of the 13 illicit images on any of Plaintiff's electronic devices.

71.    Defendants did not locate child pornography of any kind on any of Plaintiff's electronic devices.

72.    The lack of evidence did not deter Defendants' reckless pursuit of Plaintiff.

*City of El Dorado's Customs, Policies, and Practices*

73.    At the time of the investigation, the Defendant City, through its police department, held itself out as having the expertise and resources to investigate cybercrimes, including cybercrimes involving the possession and distribution of child pornography.

74.    The Defendant City, through its police department, assigned Defendants Rowland, Williams, and Harwell to the ICAC Task Force and, in doing

11

so, represented to the prosecuting attorney and the district court that they possessed the expertise needed to investigate cybercrimes involving the possession and distribution of child pornography.

75.     Although the Defendant City designated Defendants Rowland, Williams, and Harwell as having the expertise to involve crimes such as the one committed using Plaintiff's Facebook account, in reality their expertise was woefully inadequate.

76.     Specifically, the Defendant City, through its police department, failed to provide adequate training to Defendants Rowland, Williams, and Harwell in the investigation of cybercrimes and, specifically, how to identify cybercrime associated with a hack of an individual's social media account.

77.     The Defendant City's failure to train exposed innocent individuals like Plaintiff to arrest and prosecution for horrendous crimes they did not commit.

*Criminal Court Proceedings*

78.     Despite overwhelming evidence of Plaintiff's innocence, Defendant Officers pressed forward with the charges.

79.     On December 29, 2021, Plaintiff was arrested and booked at the county jail.

80.     On December 31, 2021, the Circuit Court of Union County, Arkansas, Fourth Division ("the circuit court"), set a bond of $50,000.00, and imposed a 7:00 p.m. to 7:00 a.m. curfew on Plaintiff.

81.     Plaintiff appeared in court on  January 5, 2022.

82.     Intent on making a public spectacle, Defendant Officers re-arrested Plaintiff in the courtroom and booked him on additional charges related to the same 13 images.

83.     The circuit court did not increase or modify the conditions of Plaintiff's bond at the January 5, 2022, court appearance.

84.     Defendant Officers were incensed that Plaintiff was released on such a "low" bond.

85.     Plaintiff appeared in court again on January 7, 2022.

86.     Out of sheer malice, Defendant Officers arrested Plaintiff for a third time when he appeared in court on January 7, 2022.

87.     The third arrest was again based on the same alleged conduct.

88.     On January 7, 2022, the circuit court set an additional bond of $50,000.00 and ordered Plaintiff to be placed on electronic monitoring at Plaintiff's expense.

89.     Defendant Officers thereafter presented the case to the prosecuting attorney.

90.     Defendant Officers' case against Plaintiff consisted solely of the fact that the images were uploaded to Plaintiff's Facebook account, and the irrefutably false assertion that the images were uploaded from an IP address associated with Plaintiff.

13

91.    Defendant Officers intentionally withheld from the prosecuting attorney the exculpatory evidence available in the CyberTipline Report as described in this Complaint.

92.    The prosecuting attorney did not perform any of his own investigation and he relied entirely on Defendant Officers' investigation and purported expertise in investigating internet crimes against children.

93.    As a result of Defendant Officers' misconduct, on March 3, 2022, the prosecuting attorney filed a 52-count information against Plaintiff, alleging various child pornography offenses.

94.    After the charges were filed, Plaintiff, through his defense attorney, endeavored to obtain a digital copy of the forensic report generated by Facebook for an expert to review.

95.    Knowing that the forensic report would exonerate Plaintiff, Defendant Officers obfuscated the location of the forensic report from defense counsel and the prosecuting attorney.

96.    Only after several months of asking for the forensic report was it finally disclosed to the defense.

97.    In March 2023, Plaintiff's defense attorney's expert issued a report describing the results of her forensic examination of the evidence, including the CyberTipline Report and copies of several of Plaintiff's electronic devices.

98.    Based on a review of the CyberTipline Report and other evidence, the expert concluded that an unauthorized user, *i.e.*, a hacker, accessed Plaintiff's

Facebook account on an isolated date for the purpose of uploading obvious illegal material to a public platform.

99.    After reviewing the expert's report, the prosecuting attorney filed a motion to dismiss all the charges against Plaintiff.

100.    On June 20, 2023, the district court granted the State's motion to dismiss.

*Plaintiff's Damages*

101.    The child pornography charges filed against Plaintiff devastated his life.

102.    After his arrests, Plaintiff lost his employment and had to pay for a criminal defense attorney and expert to defend against the charges, as well as the electronic monitoring device ordered by the court.

103.    The financial fallout of the charges, while significant, pales in comparison to the toll the accusations took on Plaintiff's emotional and mental wellbeing.

104.    Plaintiff faced the possibility that he would be wrongfully convicted of a  horrific offense he did not commit and sentenced to decades in prison.

105.    Local news organizations plastered Plaintiff's name and the charges against him all over newspapers and in online news reports.

106.    The reports indicated that Plaintiff was arrested twice for child pornography, and that he faced 52 counts for possessing child porn.

107.   If Plaintiff's name is searched online, the search results include stories with headlines about the child pornography charges filed against him even though the charges have been dismissed.

108.   Due to the nature of the charges, Plaintiff was unable to attend functions at his children's school, and he was discouraged from attending church.

109.   Plaintiff became a pariah in the community.

110.   Rumors were spread that Plaintiff carried a flash drive on his key chain that was loaded with child pornography, and that he was buying and selling child pornography online using cryptocurrency.

111.   Even after the charges were dismissed, Plaintiff's friends, neighbors, and colleagues in the community continue to treat him differently.

112.   Plaintiff will always endure the stain that comes from having been wrongly accused of being a pedophile.

### CAUSES OF ACTION

### COUNT I

**42 U.S.C. § 1983 – 4th Amendment**
**False Arrest**
**(Defendants Rowland, Williams, and Harwell)**

113.   Each paragraph of this Complaint is incorporated as if restated fully herein.

114.   As a result of Defendant Officers' "investigation," on December 28, 2021, Defendant Rowland filed an affidavit purporting to support probable cause for Plaintiff's arrest.

115.   Defendant Rowland intentionally and/or recklessly omitted material information from the affidavit that would have negated probable cause.

116.   Defendant Rowland intentionally and/or recklessly fabricated material information in the affidavit without which there would not have been probable cause.

117.   Defendants Williams and Harwell reviewed the affidavit, and they were aware exculpatory evidence was omitted and fabricated evidence was included.

118.   As a direct and proximate result of Defendant Officers' misconduct,  a warrant was issued for Plaintiff's arrest.

119.   As a direct and proximate result of Defendant Officers' misconduct, Plaintiff was arrested without probable cause on December 29, 2021, January 5, 2022, and January 7, 2022.

120.   Defendant Officers' misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

121.   Defendant Officers' misconduct violates Plaintiff's rights under the 4th Amendment of the United States Constitution, rendering them liable for Plaintiff's damages.

## COUNT II

### 42 U.S.C. § 1983 – 14th Amendment Due Process
### Fabrication of Evidence
### (Defendants Rowland, Williams, and Harwell)

122. Each paragraph of this Complaint is incorporated as if restated fully herein.

123. Defendant Officers intentionally and/or recklessly fabricated evidence that the IP address from which the illicit images were uploaded "belonged" to Plaintiff.

124. The fabricated evidence was material to Plaintiff's arrest and the prosecuting attorney's decision to prosecute Plaintiff.

125. As a direct and proximate result of Defendant Officers' misconduct, child pornography charges were filed against Plaintiff.

126. As a direct and proximate result of Defendant Officers' misconduct, the prosecution against Plaintiff continued to June 20, 2023, when the charges were dismissed.

127. As a direct and proximate result of Defendant Officers' misconduct, Plaintiff sustained injuries and damages as alleged above.

128. Defendant Officers' misconduct shocks the conscience.

129. Defendant Officers' misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

18

130.    Defendant Officers' misconduct violates Plaintiff's rights under the 14th Amendment of the United States Constitution, rendering them liable for Plaintiff's damages.

**COUNT III**

**42 U.S.C. § 1983 – 4th Amendment**
**Malicious Prosecution**
**(Defendants Rowland, Williams, and Harwell)**

131.    Each paragraph of this Complaint is incorporated as if restated fully herein.

132.    Defendant Officers initiated and continued the criminal proceedings against Plaintiff.

133.    Defendant Officers acted with malice.

134.    The criminal proceedings against Plaintiff lacked probable cause.

135.    The criminal proceedings against Plaintiff terminated in Plaintiff's favor on June 20, 2023, when the charges were dismissed.

136.    As a direct and proximate result of Defendant Officers' misconduct, Plaintiff sustained injuries and damages as alleged above.

137.    Defendant Officers' misconduct violates Plaintiff's rights under the 4th Amendment of the United States Constitution, rendering them liable for Plaintiff's damages.

## COUNT IV

### 42 U.S.C. § 1983 14th Amendment Due Process
### Reckless Investigation
### (Defendants Rowland, Williams, and Harwell)

138.    Each paragraph of this Complaint is incorporated as if restated fully herein.

139.    Defendant Officers conducted a constitutionally deficient investigation by purposefully ignoring evidence showing that an unidentified individual hacked Plaintiff's Facebook account and uploaded the illicit images.

140.    Defendant Officers' investigation was so deficient that it shocks the conscience.

141.    As a direct and proximate result of Defendant Officers' misconduct, Plaintiff was wrongfully arrested and prosecuted for child pornography.

142.    As a direct and proximate result of Defendant Officers' misconduct, Plaintiff sustained injuries and damages as alleged above.

143.    Defendant Officers' misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

144.    Defendant Officers' misconduct violates Plaintiff's rights under the 14th Amendment of the United States Constitution, rendering them liable for Plaintiff's damages.

20

## COUNT V

### 42 U.S.C. § 1983
### Conspiracy to Deprive Constitutional Rights
### (Defendants Rowland, Williams, and Harwell)

145.   Each paragraph of this Complaint is incorporated as if restated fully herein.

146.   Defendant Officers reached an agreement amongst themselves to recklessly investigate Plaintiff, fabricate evidence of his guilt, falsely arrest him, and initiate criminal proceedings without probable cause.

147.   Defendant Officers committed overt acts in furtherance of the conspiracy.

148.   As a direct and proximate result of the overt acts committed in furtherance of the conspiracy, Plaintiff sustained injuries and damages as alleged above.

149.   Defendant Officers' misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

150.   Defendant Officers' misconduct violates Plaintiff's rights under the 4th and 14th Amendments of the United States Constitution, rendering them liable for Plaintiff's damages.

## COUNT VI

### 42 U.S.C. § 1983
### Failure to Intervene
### (Defendants Williams and Harwell)

151.   Each paragraph of this Complaint is incorporated as if restated fully herein.

152.   Defendants Williams and Harwell had knowledge of the constitutional violations perpetrated by Defendant Rowland and had the opportunity to intervene.

153.   During the constitutional violations perpetrated by Defendant Rowland, Defendants Williams and Harwell stood by without intervening to prevent the misconduct.

154.   As a direct and proximate result of Defendant Williams' and Defendant Harwell's misconduct, Plaintiff was wrongfully arrested and prosecuted for child pornography.

155.   As a direct and proximate result of Defendant Williams' and Defendant Harwell's misconduct, Plaintiff sustained injuries and damages as alleged above.

156.   Defendant Williams' and Harwell's misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

157.   Defendant Williams' and Harwell's misconduct violates Plaintiff's rights under the 4th and 14th Amendments of the United States Constitution, rendering them liable for Plaintiff's damages.

## COUNT VII

### 42 U.S.C. § 1983
### Supervisory Liability
### (Defendant Harwell)

158.   Each paragraph of this Complaint is incorporated as if restated fully herein.

159.   Defendant Harwell was aware of Defendant Rowland's and Defendant Williams' violations of Plaintiff's constitutional rights, and he facilitated, approved of, and condoned the violations.

160.   As a direct and proximate result of Defendant Harwell's misconduct, Plaintiff was wrongfully arrested and prosecuted for child pornography.

161.   As a direct and proximate result of Defendant Harwell's misconduct, Plaintiff sustained injuries and damages as alleged above.

162.   Defendant Harwell's misconduct was objectively unreasonable and undertaken intentionally, maliciously, and with willful or reckless indifference to Plaintiff's constitutional rights.

163.   Defendant Harwell's misconduct violates Plaintiff's rights under the 4th and 14th Amendments of the United States Constitution, rendering him liable for Plaintiff's damages.

## COUNT VIII

### 42 U.S.C. § 1983
### *Monell* – Failure to Train
### (Defendant City of El Dorado)

164.   Each paragraph of this Complaint is incorporated as if restated fully herein.

165.   The Defendant City provided inadequate training to its officers to competently investigate internet crimes against children.

166.   The Defendant City's training was so inadequate that Defendant Officers failed to discern that the illicit images were uploaded to Plaintiff's Facebook account during a hack, the existence of which was obvious based on the CyberTipline Report.

167.   Nevertheless, the Defendant City held out Defendant Officers as qualified and having the expertise to investigate internet crimes against children.

168.   Policy makers with the El Dorado Police Department, including chief of police Kenny Hickman, had knowledge of the inadequate training provided to Defendant Officers related to investigating internet crimes against children.

169.   The failure to train was a deliberate and conscious choice of policymakers, who wanted to promote the department's purported expertise without investing in the recourses to actually cultivate it.

170.   The Defendant City's failure to train constitutes a policy or custom.

24

171.   The Defendant City's failure to train amounts to deliberate indifference to the constitutional rights of persons whom the ICAC investigates, including Plaintiff.

172.   The Defendant City's failure to train was the moving force behind the violations of Plaintiff's constitutional rights.

173.   The Defendant City's failure to train was the moving force behind Plaintiff's injuries and damages as alleged above.

174.   As the Defendant City's failure to train was the moving force behind the constitutional deprivations and Plaintiff injuries, the Defendant City is liable for Plaintiff's damages.

## COUNT IX

### State Law – Malicious Prosecution
### (Defendants Rowland, Williams, and Harwell)

175.   Each paragraph of this Complaint is incorporated as if restated fully herein.

176.   Defendant Officers knowingly and maliciously initiated and caused criminal proceedings to continue against Plaintiff without probable cause.

177.   The prosecution terminated in Plaintiff's favor on June 20, 2023, when the charges were dismissed.

178.   Defendant Officers' misconduct directly and proximately caused the injuries and damages to Plaintiff alleged above, rendering them liable for malicious prosecution under Arkansas law.

## COUNT X

### State Law—Conspiracy
### (Defendants Rowland, Williams, and Harwell)

179.   Each paragraph of this Complaint is incorporated as if restated fully herein.

180.   Defendant Officers combined to maliciously prosecute Plaintiff for child pornography by fabricating evidence and recklessly investigating the hack of Plaintiff's Facebook account.

181.   Defendant Officers had the specific intent to cause Plaintiff's wrongful arrest and prosecution.

182.   Defendant Officers acts committed pursuant to the conspiracy directly and proximately caused the injuries and damages to Plaintiff as alleged above, rendering them liable for the tort of civil conspiracy under Arkansas law.

## COUNT XI

### State Law—Outrage
### (Defendants Rowland, Williams, and Harwell)

183.   Each paragraph of this Complaint is incorporated as if restated fully herein.

184.   Defendant Officers intended to inflict emotional distress upon Plaintiff by fabricating evidence of Plaintiff's guilt, omitting exculpatory evidence from the search and arrest warrants, wrongfully accusing Plaintiff of being a pedophile, and wrongfully re-arresting Plaintiff on multiple occasions for the same alleged conduct.

185.   In the alternative, Defendant Officers should have known that emotional distress was the likely result of their conduct.

186.   The foregoing conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

187.   Defendant Officers' misconduct directly and proximately caused Plaintiff emotional distress so severe that no reasonable person could be expected to endure it.

188.   Defendant Officers' misconduct renders them liable for damages pursuant to the tort of outrage under Arkansas law.

## COUNT XII

### State Law–Indemnification
### (Defendant City of El Dorado, Arkansas)

189.   Each paragraph of this Complaint is incorporated as if restated fully herein.

190.   At all times relevant herein, Defendant Officers acted as agents of, and in the course and scope of their employment with, the Defendant City.

191.   Pursuant to Ark. Code Ann. § 21-9-304, the Defendant City is liable to pay all judgments and settlements entered against their respective employees for the claims set forth above.

<u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiff, Christopher Husbands, respectfully requests that this Court enter judgment in his favor and against Defendants Shelly Rowland, Sabrina Williams, Scott Harwell, and the City of El Dorado, Arkansas, awarding compensatory damages, costs, and attorney's fees, along with punitive damages against Defendants Rowland, Williams, and Harwell in their individual capacities, as well as any other relief this Court deems just and appropriate.

<u>JURY DEMAND</u>

Plaintiff, Christopher Husbands, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ Kathleen T. Zellner
Kathleen T. Zellner
Kathleen T. Zellner & Associates, P.C.
4580 Weaver Parkway, Suite 204
Warrenville, Illinois 60555
(630) 955-1212
attorneys@zellnerlawoffices.com